# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| GARY DUPREE ) | |
| ) | |
| Petitioner, ) | Case Nos. 4:13-cr-34, 4:15-cv-56 |
| ) | |
| v. ) | District Judge Harry S. Mattice |
| ) | |
| UNITED STATES OF AMERICA ) | Mag. Judge Christopher H. Steger |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Gary Dupree ("Petitioner"), a federal prisoner, was convicted of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "2255 Motion") [Doc. 44].[1] The government has responded [Doc. 46]. Petitioner asserts that his trial counsel was ineffective in violation of the Sixth Amendment because she failed to conduct a proper investigation into his case and, concomitantly, that his guilty plea was not voluntary because it was based on incorrect or incomplete information. For the reasons stated herein, the 2255 Motion shall be **DENIED**.

**I. Standards**

   **A. Threshold Standard**

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States; or that the court lacked jurisdiction to impose the sentence; or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief

---

[1] All citations to the district court record are to the docket of Case No. 4-13-cr-34, which is the underlying criminal case.

1

under Section 2255, a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley,* 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). In order to obtain collateral relief under Section 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a Section 2255 motion if "it plainly appears from the face of the motion, the attached exhibits, and the record of the prior proceedings that the movant is not entitled to relief." *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states 'only bald legal conclusions with no supporting factual allegations.'") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)). If the motion is not summarily dismissed under Rule 4(b), Rule 8 requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or

conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

B. **Procedural Default**

Generally, a federal prisoner is procedurally barred from raising on collateral review a claim which he did not raise on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001); *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). There are exceptions to this rule, however. A procedurally defaulted claim may be considered on collateral review if the petitioner can show: (1) cause for failure to raise the claim on direct appeal; and (2) actual prejudice resulting from the alleged violation. *Bousely*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698-700; *Elzy*, 205 F.3d at 884. If the petitioner fails to show cause, then it is not necessary to consider whether petitioner suffered prejudice. *Bousely*, 523 U.S. at 623. Ineffective assistance of counsel is considered "cause" for failure to raise an issue on direct appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Ratcliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993); *Elzy*, 205 F.3d at 884.

In addition, under certain circumstances, a petitioner may be able to obtain review of his claims even if he is unable to show cause and prejudice. In that circumstance, review would only occur if petitioner's case fits within a narrow class of cases permitting review for the purpose of preventing a fundamental miscarriage of justice. A concrete example of such miscarriage of justice would be submission of new evidence showing that a constitutional violation probably resulted in a conviction of one who is actually innocent. *Bousley*, 523 U.S. at 622-23 (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)); *see also Peveler*, 269 F.3d at 698.

3

### C. Ineffective Assistance of Counsel

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *Huff*, 734 F.3d at 606. The test provides that, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense." *Id*. (citing *Strickland*, 466 U.S. at 687).

The first prong requires a petitioner to show his attorney's performance was deficient by demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The Supreme Court "has declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A reviewing court must be "highly deferential" to counsel's performance, because

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a <u>court must indulge a strong presumption that counsel's conduct</u> falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the second prong of the *Strickland* test, *i.e.*, prejudice. Thus, a petitioner must show not only that his

counsel's representation was objectively unreasonable, but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694). Although the *Strickland* Court emphasized that both prongs must be established in order for the petitioner to meet his burden, it held there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

**II.     Facts**

On May 14, 2014, pursuant to a plea agreement, Petitioner pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) [Doc. 22, Minute Entry for Rearraignment]. In his Plea Agreement, Petitioner waived his right to direct appeal of his conviction and/or resulting sentence except for a sentence outside the statutory range. He also waived his right to collaterally attack his conviction and/or sentence except for claims of ineffective assistance of counsel or prosecutorial misconduct not known to him at the time of the entry of judgment [Doc. 18, Plea Agreement, ¶ 9]. Judgment was entered on September 9, 2014, and Petitioner was sentenced to 85 months' imprisonment and three years of supervised release [Doc. 38, Judgment]. He timely filed this 2255 Motion on September 3, 2015 [Doc. 44].

In the factual basis of his Plea Agreement, Petitioner admitted to the following: On January 17, 2012, he sold a Hi-Point .45 caliber pistol to a confidential informant for $200.00 during a controlled buy that took place at Petitioner's residence in Tullahoma, Tennessee. The

5

controlled buy was recorded with both video and audio, and Petitioner is depicted on the video handling the Hi-Point .45 caliber pistol during the transaction [Doc. 18, Plea Agreement, ¶ 3].

During his rearraignment on May 14, 2014, in which Petitioner pleaded guilty, Petitioner testified under oath as follows:

> THE COURT: All right. Now, your plea agreement contains what's called a factual basis. It's at Paragraph 3 of your agreement. And if you want, I can have that read out loud to you or you can review it yourself. I'm about to ask you some questions about it. Do you want me to have it read to you?
>
> THE DEFENDANT: No, I -- we've been over it several times, yeah, a bunch.
>
> THE COURT: That is just exactly what I'm going to ask you about, because, again, this is making sure that you're making an informed decision.
>
> THE DEFENDANT: (Moving head up and down.)
>
> THE COURT: Did you carefully review the factual basis contained in your plea agreement with your attorney prior to signing the plea agreement?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And do you agree that the factual basis stated in your plea agreement's true and accurate?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Is there anything in your factual basis in your plea agreement that you contend is in any way false or misleading?
>
> THE DEFENDANT: None that we could come up with.
>
> THE COURT: All right. And do you agree with the government's summary of what you did?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Are you pleading guilty because you are in fact guilty?
>
> THE DEFENDANT: Yes, ma'am.

Petitioner also testified on May 14, 2014, among other things, that he had no "side" agreements with anyone else and that the Plea Agreement constituted the entire agreement [Doc. 42, Transcript of Rearraignment at 6, 9]. Petitioner further testified that no one had threatened him to enter into the agreement or promised him a lighter sentence or any other form of leniency to induce him to plead guilty pursuant to the Plea Agreement [*Id.* at 9, 12]. The Court carefully reviewed with Petitioner those rights he was relinquishing in order to plead guilty and Petitioner confirmed that he still wanted to plead guilty [*Id.* at 4-5, 11]. The Court reviewed the charge with Petitioner and the potential punishment that he faced if he pleaded guilty, and Petitioner stated he understood them [*Id.* at 12-17]. The Court also ensured that Petitioner had had adequate time to read and discuss the Plea Agreement with his attorney, that he was satisfied with his attorney's representation, and that he had signed the Plea Agreement [*Id.* at 3-5].

### III. Analysis

Petitioner alleges he was deprived of effective assistance of counsel as required by the Sixth Amendment because his trial counsel failed to investigate the facts of his case properly. And, as a result, "his guilty plea was entered involuntarily, because his counsel was ineffective in advising him to plead guilty without conducting any investigation." [Doc. 44, 2255 Motion at 8].

More specifically, Petitioner asserts his trial attorney was ineffective because she did not review the video of the gun sale provided by the government as evidence against Petitioner, and, had she done so, she would have known that Petitioner was not in the video. Petitioner further asserts that his counsel failed to provide Petitioner with a transcript of the video or allow him to see and listen to the video. He claims that, had he reviewed the video, he could have told his counsel that he was not on the video of the gun sale. Petitioner further "denies that he had the

7

.45 caliber pistol at issue in his possession and states that he did not admit to having the weapon in his possession" [Doc. 44, 2255 Motion at 3]. Finally, Petitioner asserts that his counsel "failed to inquire of him regarding any exculpatory witness testimony to the purchase of the firearm at issue," and, had she done so, Petitioner could have told her that the person in the video was a person known to him as Gary Stalls [*Id.* at 7]. The government disputes Petitioner's assertion that he is not the man selling the pistol in the video at issue. The government argues that the video, date-stamped January 17, 2012, does show Petitioner in possession of the firearm [*See* Doc. 46, government's response at 5-6].

The Court finds it is unnecessary to hold an evidentiary hearing to determine whether Petitioner's trial counsel viewed the video at issue and/or failed to arrange for the Petitioner to see the video at issue. Even if Petitioner's contentions are true, he cannot show he was prejudiced by such omissions. "[A] habeas petitioner faces a heavy burden in collaterally attacking a guilty plea based on allegations contrary to oral responses given in open court during a Rule 11 colloquy." *Garnica v. United States*, 361 F. Supp.2d 724, 733 (E.D. Tenn. 2005) (citing *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992) and *United States v. Standiford*, 148 F.3d 864, 868 (7th Cir. 1998)). In *Blackledge v. Allison,* the Supreme Court explained the importance and weight of representations made during the plea hearing, stating:

> … the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge*, 431 U.S. 63, 73-74 (1977). "[W]here procedures [pursuant to Fed. R. Crim. P. 11] were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's

plea agreement consists of the terms revealed in open court. . . ." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986).

In the instant case, Petitioner testified under oath before the Court in his rearraignment that he had reviewed the factual allegations in the Plea Agreement many times and that he agreed with them. He admitted that, on January 17, 2012, he possessed a Hi-Point .45 caliber pistol which he sold for $200.00 to a person in his residence in Tullahoma, Tennessee, and that he was depicted in a video of the transaction handling the pistol. He unequivocally stated he was pleading guilty because he was, in fact, guilty, and that no one had attempted to induce or coerce him into entering into the Plea Agreement. Had Petitioner known at the time that he entered into the Plea Agreement and pleaded guilty that he did not sell a pistol to a person on January 17, 2012, he certainly would have known that he would not be depicted in a video of that transaction.

In his 2255 Motion, Petitioner further states that he "did not admit to having the weapon in his possession" [Doc. 44, 2255 Motion at 3]. The transcript from the rearraignment belies this contention. Petitioner admitted, without qualification, to the factual basis of the Plea Agreement which included an admission that he possessed a Hi-Point .45 caliber pistol. Petitioner's current affidavit disavowing any involvement in the transaction at issue contradicts his admissions at his rearraignment. Petitioner has not alleged, much less demonstrated, that the Court in his rearraignment failed to properly advise him of his constitutional rights or that the colloquy was in any way inadequate under Fed. R. Cri. P. 11 . *See United States v. Brenner*, __Fed. App'x __ 1211874, at *4 (Mar. 8, 2018) (Rule 11 "'requires that a district court verify that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for

concluding that the defendant committed the crime charged.'") (quoting *United States v. Webb*, 403 F.3d 373, 378–79 (6th Cir. 2005)). The Court in the instant case carefully followed the requirements of Rule 11, as the transcript of the rearraignment verifies, and thus Petitioner is bound by his statements at the rearraignment. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry.") (internal punctuation and citations omitted); *Brenner*, __Fed. App'x __ 2018 WL 1211874, at *4 (same).

## IV. Conclusion

Petitioner has not met his heavy burden in collaterally attacking his guilty plea based on allegations contrary to his oral responses given in open court and under oath during the Rule 11 colloquy. Petitioner is bound by his statements made under oath to the Court at his rearraignment. Accordingly, Petitioner cannot prevail on his claim of ineffective assistance of counsel because he cannot show that he suffered prejudice, even if one assumes that his counsel failed to show him the video at issue and that such failure fell below an objective standard of reasonableness.[2] For the reasons stated herein, the Court finds no evidentiary hearing for this 2255 Motion is necessary, and the Court concludes on the basis of the record before it that Petitioner is not entitled to relief. His 2255 Motion is therefore **DENIED**.

**ENTER.**

　　　　　　　　　　　　　　　　　　*/s/ Harry S. Mattice, Jr.*_____
　　　　　　　　　　　　　　　　　　HARRY S. MATTICE, JR.
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[2] The Court offers no opinion as to whether Petitioner's counsel did or did not view the video and/or show it to Petitioner.